Judge Underwood
delivered the Opinion of the Court.
A judgment was obtained against Lester, for the purchase money of a tract of land, which he contracted for with the Prestons, who claimed under Smith &c. ■ Les *11 ter thereupon filed his bill, suggesting that Harris had purchased the land on account of the taxes due thereon,' and had obtained a deed of conveyance therefor from the register; in consequence of which, apprehensions were entertained that the title of Harris would prove superior to that of his vendors, and those under whom they claimed. Lester therefore made Harris, the Pres-tons, Smith &c. defendants to his bill, prayed that they might be compelled to interplead, and set forth their various claims and titles; and in the event of being unable to obtain a good title, asked for a rescission of the contract &c.
A party not in* uofmTiitainañ / original bill to J o^co^el^Ae''relinquishment | claim!— where one- in possession brings bis bill against those from whom he derives title, and makes others also, from whose claims he apprehends danger, defendants — requiring them to interplead with his vendors — the chancellor will take jurisdiction as between these defendants, and settle the whole controversy ; and the jurisdiction, having once attached, will not be taken away by the dismissal of the original bill ; a decree upon any remaining cross bill, will be efffectual.
Harris answered, setting up the validity of his title .under the register’s deed. lie made his answer operate as a bill against Smith &c., and prayed that they might, be compelled to relinquish all claim, and that his title might be quieted &c.
Smith &o. answered, impeaching the validity of the register’s deed ; made their answer a cross bill against Harris, and prayed that he might be compelled to re*linquish, in order to quiet their title &c.
In April, 1831, Lester dismissed his bill upon a com.* promise between himself and the plaintiffs at law. In July, 1831, Smith &c. filed their answer and cross bill to the bill of Harris against them. In October, 1831, Harris discontinued his cross bill against Smith &c. In October, 1832, the court took the cross bill of Smith &c. against Harris, for confessed, and rendered a decree against him, requiring him to convey to Smith &c. To reverse this.decree, Harris prosecutes a writ of error.
The main question relates to the jurisdiction of the court. The holder of the legal title, not, in actual possession', cannot, as a general rule, maintain a bill to quiet-his title, and to compel a relinquishment of adverse claims. But in this case, we think the chancellor acted correctly in deciding the controversy between Harris *12 and Smii.li &c. Those claiming under Smith &c. were in possession. Lester made out a proper case for the interposition of a court of chancery in his behalf. Before he should be compelled to pay the purchase money, the chancellor ought to have seen that he could get a good title. There was no way to do justice to Lester but by compelling Harris arid Smith &c. to settle between them who had the better"right. They were properly brought before the court for that purpose. Harris undertook to settle his right by filing his answer, and making it operate as a bill against Smith &c. They, although protesting against the jurisdiction, entered .upon the coutroversywith a view to compel Harris to relinquish, and persevered until a decree was rendered in their favor. The chancellor having thus gotten hold of the contest, as incidental to the administration of complete justice in behalf of Lester, there can be no doubt, if Lester had not compromised and dismissed his bill, and if Harris had not discontinued his cross bill, that it would have been necessary to adjudicate upon the conflicting claims ; and then, as the chancellor delights to settle the whole of a controversy in its different ramifications, to prevent a multiplicity of suits, and all parties being before him, he would, by his decree, have put an end to the whole case between all the parties.
* The revenue de'Vwhiefriand was sold for tax-rights bTfemes coverts — a sale . of land in which any feme covert was a joint owner was invalid, and the register’s deed passed no title.
We do not perceive how the jurisdiction can be ousted by the conduct of one or more of the parties compromising or discontinuing the cross bill filed. It would be of evil tendency to allow such a practice. It might, after the trouble and expense of preparation, put ^he rights of a party, reluctantly 'drawn in, at stake upon the issue of a new suit. We cannot thus allow parties to withdraw from a. jurisdiction which has fairly attached.
Upon the merits, the court decided correctly. The ^ast P»’0viS0 in the twenty third section of the act of 1799, entitled “an act to amend and reduce into one the several acts establishing a permanent revenue,” saves the rights of femes cover Is. There were two femes coverts hokl- ° *13 ing a joint interest in the land at the time it was sold by the register for taxes. Since the sale, Smith &c- have paid the taxes for those years on account of which the sales were made, one of the femes still remaining covert. These facts effectually destroy the validity of Harris’ claim.
Decree affirmed, with costi.