ROONEY v. PORCH. (No. 281–3525.)

(Commission of Appeals of Texas, Section B. April 5, 1922.)

1. **Vendor and purchaser ⬉257—Title of vendor who reserves lien superior only in so far as it is security for the purchase money.**

The title that remains in a vendor, who reserves in his deed a lien to secure the purchase money, is superior to that of the purchaser in the sense that the purchaser cannot assert his title against the vendor unless he has paid the purchase money, but, except as security for the purchase-money debt, the title is in the purchaser, and when purchase money is paid all semblance of title in the vendor ceases, and title absolute vests in purchaser.

2. **Vendor and purchaser ⬉257—Nature of vendor's title unrelated to lien retained to secure purchase money.**

Unrelated to the lien retained to secure the purchase money, the title remaining in the vendor is merely a right in the vendor to rescind the sale and recover the land by suit, or take it back under certain circumstances without suit on failure or refusal of the vendee to pay the purchase price.

3. **Vendor and purchaser ⬉269—Vendor who retained lien could either foreclose lien or rescind the contract on purchaser's default.**

Vendor's lien gives vendor on purchaser's failure to pay the purchase money two alternative rights, one to foreclose and take a personal judgment for any balance left unpaid after applying the proceeds of the sale to the debt, and the other to rescind the contract and take back the land.

4. **Trespass to try title ⬉6(1), 41(1)—Plaintiff must recover upon the strength of his own title, and must establish a prima facie case.**

In action of trespass to try title, the plaintiff must recover upon the strength of his own title, and not upon the weakness of defendant's title, and must establish a prima facie case; that is, one upon which he is entitled to recover if no evidence is offered to the contrary.

5. **Vendor and purchaser ⬉180—Purchase-money note presumed to have been paid when vendor executed deed to third party in absence of proof to contrary.**

In trespass to try title by purchaser's successor against successor in interest of third person to whom vendor conveyed the land after conveyance to purchaser, it will be presumed, in the absence of proof to the contrary, that purchase-money notes assumed by purchaser had been paid when vendor executed deed to the third party.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by T. E. Rooney against W. W. Porch. Judgment for defendant affirmed by the Court of Civil Appeals (223 S. W. 245), and plaintiff brings error. Reversed and remanded, with directions.

---

Tharp & Tharp, of Houston, for plaintiff in error.

Ward & Ward, of Houston, for defendant in error.

HAMILTON, J. T. E. Rooney brought against W. W. Porch this suit in trespass to try title to 58.7 acres of land, a part of 228.7 acres in Harris county, Tex., patented to Thomas Desel. Desel conveyed the 228.7 acres to John H. Ruff on October 6, 1892, for a consideration of $609.86 cash and two vendor lien notes for $686.10 and $533.63, due in one and two years, respectively, after the date of conveyance. The deed reserved a vendor's lien, and the notes were further secured by a deed of trust on the land.

On November 19, 1892, Ruff executed a deed conveying the 58.7 acres, in litigation here, to T. J. Pierce for a consideration of $156.53 cash, and the assumption and agreement by Pierce to pay $156.53 on each of the two notes given by Ruff in part payment of the purchase money for the 228.7 acres, above described. This deed expressly reserved a vendor's lien to secure the payment of the sums agreed to be paid by Pierce on those two notes.

On December 20, 1892, Desel transferred the notes, above described, executed by John H. Ruff, to C. Cusack.

On January 18, 1907, Ruff conveyed the whole of the 228.7 acres to John C. Morrison.

On February 7, 1907, C. Cusack released the liens upon the land, securing the two notes which had been transferred to him by Desel. This release recites that the two notes had been fully paid, canceled, and surrendered, and in consideration of such payments Cusack releases and quitclaims unto John H. Ruff all right, title, and interest in the land by virtue of the liens thereon securing said notes.

"The title conveyed to Morrison on January 18, 1907, was conveyed to appellee Porch on May 15, 1908, by J. A. Freedman, who held same through mesne conveyance from Morrison.

"On June 7, 1909, T. J. Pierce, for a recited consideration of $50 and other considerations not stated, conveyed the 58.7 acres conveyed to him by Ruff to Mary E. Scott by deed of general warranty. ·

"On January 6, 1912, Ruff executed a release to Pierce, reciting that he had conveyed the 58.7 acres to Pierce on December 19, 1892, and as part consideration therefor Pierce had assumed and agreed to pay $156.53 in one year and $156.53 in two years on the incumbrances then existing on the land, and that 'said notes and all interest thereon have been fully paid and canceled and surrendered to my entire satisfaction.'

"On May 14, 1916, Mary E. Scott conveyed said 58.7 acres to A. E. Coles, who on May 8, 1916, conveyed it to appellant Rooney.

"There was no testimony showing that the two amounts of $156.53, each assumed by Pierce, were paid by him."

The trial in the district court without a jury resulted in a judgment in favor of Porch, defendant in error. Rooney appealed, and the Court of Civil Appeals affirmed the judgment. 223 S. W. 245. He then sought and obtained a writ of error.

Ruff is the common source of title. Rooney claims from Ruff through Pierce. Porch claims from Ruff through Morrison. Rooney's theory as plaintiff was that the purchase money was presumed to have been paid, and that Porch's title was void because his vendor, Ruff, had no title to the land at the time he executed the deed to Porch.

[1] The title that remains in a vendor of land who reserves in his deed a lien to secure the purchase money is superior in the sense that the vendee cannot assert his title against the vendor unless the vendee has· paid the purchase money. Except, as security for the purchase-money debt,·the title is in the vendee. When the purchase money is paid, all semblance of title in the vendor ceases, and title absolute vests in the vendee.

[2] Unrelated to the lien retained to secure the purchase money, the title remaining in the vendor is merely a right in the vendor to rescind the sale and recover the land by suit or take it back under certain circumstances, without suit, on failure or refusal of the vendee to pay the purchase price. These rights are merely means provided by law to secure to the vendor the purchase money, or in lieu thereof the land itself, as a security against loss of both the purchase money and the land. Carey v. Starr, 93 Tex. 508, 56 S. W. 324; Douglass v. Blount, 95 Tex. 369, 67 S. W. 484, 58 L. R. A. 699.

In the former case the Supreme Court said:

"From the time it was first announced that the reservation of lien in a deed reserved the superior title to the vendor, there has been a continuous and persistent effort to push it to the limit of executory contracts for the sale of land, but this court has steadily resisted that effort and has uniformly limited the vendor's title to the character of security for the purchase-money debt, and, when the debt has been paid, the title of the vendor ceases."

In the case of Maverick v. Perez (Tex. Com. App.) 228 S. W. 148, it is said:

"The rights of the vendor of real estate in property conveyed under executory contract are measured by the terms of the contract, and the right to rescind and recover the property upon the strength of the vendor's so-called superior title, is but an alternative remedy which the vendor has under the contract of sale. Carey v. Starr, 93 Tex. 508, 56 S. W. 324; Douglass v. Blount, 95 Tex. 369, 67 S. W. 484, 58 L. R. A. 699. This right of rescission is by no means an absolute one, and may be lost or waived in a number of ways; and when lost it will not be revived unless to do so is necessary to protect the vendor against a successful repudiation by the vendee of the unsatisfied obligations of the contract under which he holds."

[3] The vendor's lien retained by Ruff in his deed to Pierce gave him two alternative rights upon failure to pay the purchase money—one to foreclose and take a personal judgment for any balance left unpaid after applying the proceeds of the sale to the debt; the other to rescind the contract, and take back the land. No right to either remedy arose unless there was a breach of the contract to pay the purchase price.

Ruff could not rescind without a right to rescind. He could have had no right to rescind without, at least, a breach of the contract to pay the purchase price. No evidence of the failure to pay the purchase money is contained in the record. Therefore no evidence of a right to rescind the contract of sale is shown. Twelve years after the maturity of the notes to secure which the lien was retained he deeded the land to Morrison. This was an exercise of the right of rescission if he had such right. Without the right, the form of its exercise was a nullity.

"The vendor's remedy by rescission is a harsh and stringent one, especially when a part of the consideration has been paid, and it is sought to forfeit the payment and recover or resell the land. Hence slight circumstances are seized upon to protect the vendee against the forfeiture of the amount paid, or compel the vendor to seek redress by a suit for the balance due upon the purchase money.

"He must not delay too long in insisting upon payment of the money as it falls due, or he will be considered as having waived the default. See Scarborough v. Arrant, 25 Tex. 129. He must not treat the contract as still subsisting, or do any act which may be construed into its affirmance. A transfer of one of the purchase money notes is held to amount to such an affirmance (Coddington v. Wells, 59 Tex. 49), and so doubtless is a repurchase of the land from the vendee, at least when more is paid than was due upon the original contract.

"If the vendor goes into equity to set aside the sale he must tender the purchase money already received or he will be defeated as not offering to do equity. Coddington v. Wells, supra; Thomas v. Beaton, 25 Tex. Sup. 321. The vendee, when sued for the land, may tender the money due and this will save the forfeiture, no matter how long he may have been in default." Tom v. Wollhoefer, 61 Tex. 281.

[4, 5] It is true that, in an action of trespass to try title, the plaintiff must recover upon the strength of his own title, and not upon the weakness of defendant's title. The case for plaintiff must be a prima facie case; that is, one upon which he may recover if no evidence is offered to the contrary. The presumption, in the absence of proof to the contrary, is that the portion of the notes assumed by Pierce had been paid when Ruff executed the Morrison deed. Clopper v. Sage, 14 Tex. Civ. App. 296, 37 S. W. 363. Therefore Rooney's title is prima facie superior to that of Porch.

If on another trial it is proved that the purchase money which Pierce contracted to pay had not in fact been paid, and that Ruff had not waived his right of rescission or lost it otherwise, when the Morrison deed was executed, Rooney would be entitled to recover.

These holdings demand that the judgment of the Court of Civil Appeals and of the district court be reversed, and since the trial court erred in not requiring of defendant proof of nonpayment of the money to secure which the vendor's lien was reserved in the deed to Pierce, the cause should be remanded to give him opportunity to do so.

Since the case must be reversed, as above indicated, it is not necessary to pass on the assignment complaining of the action of the trial court in refusing a new trial on the ground of newly discovered evidence. However, we do not want it to be understood that we approve the holding of the Court of Civil Appeals on that question.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.